## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Vivian Chen,

       Plaintiff,

    v.

University of the Sciences in Philadelphia

       Defendant.

Civil Action No.

## COMPLAINT - JURY TRIAL REQUESTED

### PRELIMINARY STATEMENT

  1.  This action is brought under Section 504 of the Rehabilitation Act of 1973 (Section 504) and Title III of the Americans with Disabilities Act (ADA).

### JURISDICTION AND VENUE

  2.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 1343, and the aforementioned laws.

  3.  Venue is proper under 28 U.S.C. § 1391(b).

### PARTIES

  4.  Plaintiff is Vivian Chen, who resides at 5142 Haverford Avenue, Philadelphia, PA 19139.

  5.  At all relevant times, Ms. Chen was enrolled in the University of the Sciences in Philadelphia's College of Pharmacy.

6.    Defendant is the University of the Sciences in Philadelphia, a private university which can be served at 600 South 43rd Street, Philadelphia, PA 19104. At all relevant times, University of the Sciences acted and/or failed to act through its employees, agents and/or servants (collectively, "University") for which it is responsible.

## STATEMENT OF FACTS

I.    **The University had a statutory duty to accommodate Ms. Chen's disabilities, engage in an interactive process with her to identify accommodations, and refrain from discriminating against and/or harassing her.**

7.    In 2007, when Ms. Chen was in eighth grade, she was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), Obsessive Compulsive Disorder (OCD), and Generalized Anxiety Disorder.

8.    In 2012, Ms. Chen was also diagnosed with idiopathic hypersomnia, a sleep disorder.

9.    Since middle school, Ms. Chen has seen a psychiatrist.  Ms. Chen's psychiatrist has treated her disabilities by prescribing her medication such as Adderall and Prozac.

10.    In middle school and high school, Ms. Chen received accommodations to address her disabilities.

11.    Ms. Chen also received accommodations for her college-entrance examinations (i.e., the SAT and the ACT).

2

12.     In March 2012, the University's College of Pharmacy accepted Ms. Chen.

13.     The College of Pharmacy is a six-year program that results in a Doctor of Pharmacy degree.

14.     In August 2012, Ms. Chen enrolled in the College of Pharmacy.

15.     Ms. Chen's expected graduation date was therefore in spring 2018.

16.     When Ms. Chen commenced her education, the University accommodated Ms. Chen's disabilities.

## II.   With the University fulfilling its statutory duties to her, Ms. Chen excelled during her first four years in the College of Pharmacy program.

17.     At the start of the 2012-2013 school year, Ms. Chen requested that the University accommodate her disabilities.

18.     The University approved Ms. Chen's request for accommodations.

19.     The University provided Ms. Chen (a) extended time for examinations (no more than 50% of the regular time); (b) examinations in a separate testing environment; and (c) extended time for assignments (no more than two extra days).

20.     Ms. Chen required these accommodations because her ADHD and OCD interfere with her ability to focus, and her anxiety disorder causes her stress in certain academic settings.

21.     In August 2015, at the start of Ms. Chen's fourth year in the College of Pharmacy program, the University provided her an additional accommodation: a

3

student note-taker for lecture courses because her OCD symptoms of rechecking and rereading interfered with her ability to take contemporaneous notes during a lecture.

22.     On or about October 8, 2015, Ms. Chen's psychiatrist sent a letter to the University certifying that Ms. Chen is under treatment and stating that the psychiatrist recently performed a comprehensive psychiatric evaluation of Ms. Chen.

23.     The psychiatrist's letter listed Ms. Chen's types and dosages of prescribed medication.

24.     In the letter, the psychiatrist also made recommendations for accommodations in the educational setting.

25.     The University did not raise any concerns regarding Ms. Chen's medications.

26.     Ms. Chen took the medications during her first four years in the College of Pharmacy program.

27.     From the 2012-2013 school year through the 2015-2016 school year, Ms. Chen maintained above-average grades.

28.     From the 2012-2013 school year through the 2015-2016 school year, Ms. Chen progressed through the College of Pharmacy program.

29.     Ms. Chen made the Dean's list during her first four years in the College of Pharmacy program.

4

30.     Ms. Chen was never placed on academic probation during her first four years in the College of Pharmacy program.

31.     During her time at the University, Ms. Chen worked as a pharmacy intern at Bryn Mawr Hospital and CVS Pharmacy, where she worked in direct patient care.

32.     Ms. Chen was successful in those positions.

33.     Ms. Chen took three courses in her first few years that require public speaking, for which she received two As and a B.

34.     In those courses, the professors allowed her to use notecards as accommodations.

35.     Ms. Chen requires notecards because of her OCD, ADHD, and anxiety symptoms.  For example, if she misses a detail during a presentation, she will perseverate on it because of her OCD.  Notecards help refocus her, allowing her to continue with the presentation.  Further, the presence of notecards helps allay her anxiety symptoms since they afford her ready access to the information that she must discuss.

III.   **The University breached its contractual duties to Ms. Chen in 2016 and 2017, causing her to suffer damages and thwarting the education that she paid for.**

36.   During the fall semester of the 2016-2017 school year, Ms. Chen was enrolled in "Introductory Pharmacy Practice Experiences" (IPPE), a course that met at an off-campus location at 6:45 am.

37.   The timing of Ms. Chen's medication made it difficult for her to safely drive to IPPE, so she met with her deans, Dean Laura Mandos and Dean Ross Radish.

38.   During the meeting, Ms. Chen offered information related to her medication, including the types and dosages of medication that she was prescribed.

39.   Dean Mandos told Ms. Chen that she believed the dosages of Ms. Chen's stimulant medications, Modafinil and Adderall, were too high.

40.   Ms. Chen's dosages had been set since 2012.

41.   Three psychiatrists had approved the dosages.

42.   No pharmacist ever questioned the dosage when filling Ms. Chen's prescriptions.

43.   Ms. Chen explained to the deans that she has never had an issue with the dosage and that her medication helps her perform her daily functions, but the deans ignored her.

44.   The deans instead subjected Ms. Chen to discriminatory treatment and harassment, singling her out based on her disabilities and medication.

6

45.     The deans threatened that if Ms. Chen did not take a medical leave and officially withdraw from all of her courses that semester, she would receive an F in her IPPE course.

46.     The deans engaged in no interactive process with Ms. Chen to identify other potential accommodations rather than withdraw so that Ms. Chen could continue with the program.

47.     The deans provided Ms. Chen no accommodations.

48.     Ms. Chen declined to take a medical leave.

49.     The deans then required Ms. Chen to provide documentation from her clinicians stating that she was well enough to continue her coursework.

50.     The deans also required Ms. Chen to meet with a University professor to discuss her "use of caffeine."

51.     Ms. Chen produced the requested documentation.

52.     Ms. Chen met with a University professor, Professor Downs, pursuant to the deans' orders.

53.     To ameliorate the deans' concerns, Ms. Chen requested that her psychiatrist decrease the dosages of her stimulant medications.

54.     Because of the stressful school environment created by the deans, Ms. Chen had to increase her anxiety medication.

55.     Ms. Chen finished the fall 2016 semester with mostly As and Bs in her classes, but the University, pursuant to the deans' threat, gave her an F in her IPPE course.

56.     The University continued discriminating against and harassing Ms. Chen.

57.     The University required Ms. Chen to obtain a substance abuse evaluation from Livengrin, an addiction treatment and detox rehabilitation center, before she could retake IPPE.

58.     Ms. Chen requested permission to obtain the substance abuse evaluation from other similar addiction treatment and detox rehabilitation centers because Livengrin was not covered by her health insurance.

59.     The University rejected Ms. Chen's request.

60.     On or about February 15, 2017, Ms. Chen met with Livengrin.

61.     On February 23, 2017, the University informed Ms. Chen that (a) Ms. Chen needed to sign a release of medical information so that Livengrin could communicate with her clinicians; (b) Ms. Chen needed to sign a release of consent so that her deans could speak with Livengrin and her clinicians; and (c) once the deans had a letter stating that Ms. Chen's clinicians have heard Livengrin's recommendations and feel that Ms. Chen is cleared to complete direct patient care activities, then Ms. Chen will be allowed to complete IPPE.

62.     Thereafter, Ms. Chen contacted Livengrin to provide her consent for it to communicate with her physicians.

63.     Livengrin informed Ms. Chen that it decided that it was more appropriate for her psychiatrist to oversee her health and to make medical recommendations.

64.     In the spring 2017 semester, Ms. Chen enrolled in "Seminar in Professional Practice," a course that was required and that had a public speaking component.

65.     Upon information and belief, the seminar is no longer required for the Class of 2022.

66.     The seminar is only a one-credit course.

67.     Ms. Chen met with the professor of the seminar at the start of the semester to discuss accommodations for her disabilities.

68.     Ms. Chen informed the professor about the nature of her disabilities.

69.     Grades in the seminar are largely determined by the content and delivery of a final presentation.  The presentation makes up 65% of the final grade.

70.     Students were allowed to use notecards during the presentation, but using them would result in a lower grade.

71.     In a departure from the seminar's class policy, Ms. Chen's professor refused to allow Ms. Chen to use notecards at all.

72.   Ms. Chen asked for permission to use notecards during the presentation as an accommodation for her disabilities, but the professor denied the request without engaging in any interactive process with Ms. Chen.

73.   Ms. Chen was not afforded any accommodations for her disabilities in the seminar.

74.   On February 17, 2017, the day of Ms. Chen's presentation, she had intense anxiety, stemming from her anxiety disorder.

75.   She then suffered extreme abdominal pain and had to rush to the hospital.

76.   The hospital performed an ultrasound which identified two tumors. Surgery was required.

77.   Ms. Chen was scheduled to present at 9:00 am, but she could not make it due to her medical emergency.

78.   At 9:15 am, Dean Mandos called and left a voicemail for Ms. Chen, and at 9:54 am, she emailed Ms. Chen asking Ms. Chen to contact her because Ms. Chen was not in the seminar.

79.   Ms. Chen emailed Dean Mandos that she was in the hospital.

80.   Dean Mandos responded that Ms. Chen "MUST follow policy regarding absences from seminar."

81.   Ms. Chen also called her seminar professor.  The professor told her not to worry and to bring documentation the following week.

82.    On February 27, 2017, Ms. Chen met with the professor to update the professor on her medical condition and to submit medication documentation. The professor told Ms. Chen that the absence on February 17, 2017 was not excused because Ms. Chen did not notify her in advance of the class.

83.    The professor also told Ms. Chen that "pharmacy is not for everyone."

84.    Because Ms. Chen's absence on the day of her presentation was not considered excused, she was permitted to give only a make-up presentation in front of two faculty members rather than her classmates. The highest grade she could receive for the presentation was 75%.

85.    On March 16, 2017, Ms. Chen asked the professor to reconsider her position on the absence.

86.    The professor ignored the request.

87.    Ms. Chen was scheduled to do her make-up presentation on April 21, 2017.

88.    Ms. Chen requested to be permitted to bring up notecards in case she needed to reference them, but the professor denied the request without engaging in any interactive process.

89.    As a result, Ms. Chen suffered a panic attack at the time of her presentation, and the professors at the presentation took her to the University health center for psychiatric treatment.

90.     Ms. Chen's seminar professor again told Ms. Chen that "pharmacy is not for everyone."

91.     On April 24, 2017, Ms. Chen made a request to the University's Student Accommodations office for ADA accommodations for the presentation.

92.     Ms. Chen's private therapist also sent an email to the office explaining Ms. Chen's anxiety and why she needed notecards during the presentation.

93.     On May 1, 2017, the University informed Ms. Chen that she would not be given a chance to make up the presentation.  Instead, Ms. Chen would receive a failing grade for the seminar.

94.     One of Ms. Chen's male classmates in the seminar had also failed his presentation, but the University provided him a second opportunity to present without any penalties to his scores because a spider had bitten him before his first presentation.

95.     Despite the University subjecting Ms. Chen to disparate treatment and giving her a failing grade on her presentation, Ms. Chen took the final exam for the seminar.

96.     The professor never gave Ms. Chen her exam grade.

97.     Because the seminar was a required course for Ms. Chen, she retook it in summer 2017.

98.     Before the summer session, Ms. Chen repeatedly requested that the University provide her accommodations for the seminar.

99.    On August 10, 2017, Ms. Chen met with the professor for the summer session seminar to discuss the class, including her request for accommodations for the presentation.

100.    The professor denied Ms. Chen's request, telling her just "do your best."

101.    Because Ms. Chen was given no accommodations, such as extra time or being able to refer to notes on index cards, Ms. Chen worked with her therapist and psychiatrist on Cognitive Behavior Therapy techniques and tried Exposure and Response Prevention to ease her anxiety and OCD symptoms.

102.    Because Lorazepam was prescribed to Ms. Chen to help her manage her anxiety for her presentation, Ms. Chen took it for the first time prior to the presentation.

103.    The Lorazepam slowed Ms. Chen's motor movements and speech, and she was unable to deliver her presentation within the twenty-minute time limit for the presentation.

104.    The professor gave Ms. Chen a failing grade because she exceeded the time limit.

105.    The University did not afford Ms. Chen a second opportunity to present.

106.    As such, Ms. Chen failed the seminar for a second time.

107.   Under University policy, if a student receives a failing grade in the same course twice, the University drops her from its rolls.  Students who are dropped from the rolls for failing the same course twice are eligible to reapply for readmission to a different program at the University, contingent on program capacity and the ability to demonstrate likely success in the new program.

108.   However, on at least one other occasion, another student who was male was permitted to take the seminar a third time without having to apply for readmission.

109.   On August 30, 2017, the University notified Ms. Chen that because she failed the seminar twice, she was dropped from the rolls.

110.   On September 25, 2017, Ms. Chen's psychiatrist sent the University a letter explaining the effects of Lorazepam and Ms. Chen's need for accommodations in the education setting.

111.   The University did not respond.

112.   Ms. Chen did not attend the University during the 2017-2018 school year.

113.   On August 29, 2018, Ms. Chen filed an appeal with the University, asking it to reconsider its decision to drop her from the rolls and asking it to allow her to deliver her seminar presentation with accommodations.

114.   Before Ms. Chen filed her appeal, the University had given her an outdated policy with no deadlines for the appeals process.

14

115.     Under the correct policy (the updated policy), Ms. Chen's appeal was untimely.

116.     Because Ms. Chen was given the outdated policy, however, the University permitted her appeal.

117.     On September 28, 2018, the University informed Ms. Chen that her appeal was denied.

118.     The University told Ms. Chen that she would have to apply for readmission.

119.     On November 5, 2018, at a meeting with Ms. Chen, the University informed her that should she be readmitted, she would have to retake all of her fifth year courses, even those in which she achieved As and Bs.

IV.     **The University's violation of Ms. Chen's rights has caused her to suffer significant damages.**

120.     The University's violation of Ms. Chen's rights has caused her to suffer damages in the form of lost tuition payments.  She paid tuition in 2016 and 2017 but did not receive her degree because the University failed to provide accommodations that she needed for her disabilities.

121.     The University's violation of Ms. Chen's rights has caused Ms. Chen to suffer damages in the form of costs and expenses that she incurred in attempting to comply with the University's discriminatory requirements and in attempting to proceed with her education without reasonable accommodations.

15

122.   The University's violation of Ms. Chen's rights has caused Ms. Chen to suffer damages by preventing her from working as a pharmacist. Ms. Chen has successfully completed pharmacy internships, including at CVS Pharmacy and the Food and Drug Administration (FDA).  The FDA offered Ms. Chen a full-time position as a pharmacy officer in the U.S. Public Health Service contingent on her graduation from the University. If not for the University's violation of Ms. Chen's rights, Ms. Chen would have graduated in spring 2018 and begun employment with the FDA or another entity.

123.   The University's violation of Ms. Chen's rights has caused Ms. Chen to suffer emotional distress and pain and suffering.

124.   The University's violation of Ms. Chen's rights has caused Ms. Chen to incur attorney's fees and litigation costs.

### COUNT I –
### VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

125.   Ms. Chen re-alleges the above-stated paragraphs as though fully set forth herein.

126.   Ms. Chen is an individual with a disability as defined by Section 504 of the Rehabilitation Act insofar as (a) Ms. Chen has a mental or physical impairment that substantially limits one or more major life activities, (b) she has a record of such impairment, or (c) the University and its agents incorrectly regarded Ms. Chen as having such impairment.

127.   The University is a place of public accommodations.

16

128.   Upon information and belief, the University is a recipient of federal financial assistance.

129.   The University knew and/or had notice of Ms. Chen's disabilities.

130.   Ms. Chen was otherwise qualified to matriculate at the University and participate in the activities and benefits offered by the University to its students and the public.

131.   Ms. Chen made requests for reasonable accommodations.

132.   The University discriminated against Ms. Chen on the basis of her disabilities by failing to afford reasonable accommodations in response to her requests even though the accommodations would not have fundamentally altered the nature of the University's program.

133.   The University also failed, in good faith, to initiate and/or engage in an interactive process with Ms. Chen to determine reasonable accommodations for Ms. Chen so that she would not be excluded from the participation in, be denied the benefits of, or otherwise be subjected to discrimination by the University.

134.   The University could have accommodated Ms. Chen but for the lack of its good faith.

135.   Had the University provided Ms. Chen with reasonable accommodations, Ms. Chen would have graduated from the University.

136.   The University discriminated against Ms. Chen because of her disabilities.

137.    As a direct and proximate result of the University's discrimination, as described above, the University violated Section 504 of the Rehabilitation Act.

138.    As a direct and proximate result of the University's discrimination, as described above, the University denied Ms. Chen participation in, denied her the benefits of, and/or subjected her to discrimination.

139.    As a direct and proximate result of the University's discrimination, as described above, the University wrongfully dropped Ms. Chen from its rolls, and as a result, Ms. Chen suffered the loss of educational opportunity.

140.    As a direct and proximate result of the University's discrimination, as described above, Ms. Chen has incurred financial expenses, including tuition payments and attorney's fees and litigation costs.

141.    As a direct and proximate result of the University's discrimination, as described above, Ms. Chen has incurred past and future wage loss.

142.    As a direct and proximate result of the University's discrimination against Ms. Chen and the University's violation of Section 504 of the Rehabilitation Act, Ms. Chen has sustained emotional distress and pain and suffering.

143.    The University's discrimination was willful and/or intentional.

WHEREFORE, Plaintiff Vivian Chen demands judgment and declaratory judgment against Defendant University of the Sciences in Philadelphia plus all remedies available under Section 504 of the Rehabilitation Act, including but not limited to, damages as would fully compensate Ms. Chen under Section 504 of the

Rehabilitation Act, equitable relief, including the immediate and full reinstatement in the University's College of Pharmacy program with access to reasonable accommodations, removal from her academic record of the failing grades that she received as a result of the University's violations of her rights, and recognition of all course credits that she has obtained thus far; attorney's fees and litigation costs; and all other such relief that this Court deems appropriate.

## COUNT II –
## VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

144.   Ms. Chen re-alleges the above-stated paragraphs as though fully set forth herein.

145.   Ms. Chen is an individual with a disability as defined by the ADA insofar as (a) Ms. Chen has a mental or physical impairment that substantially limits one or more major life activities, (b) she has a record of such impairment, or (c) the University and its agents incorrectly regarded Ms. Chen as having such impairment.

146.   The University is a private entity that owns, leases, or operates a place of public accommodations.

147.   The University knew and/or had notice of Ms. Chen's disabilities.

148.   Ms. Chen was otherwise qualified to matriculate at the University and participate in the activities and benefits offered by the University to its students and the public.

19

149.   Ms. Chen made requests for reasonable accommodations.

150.   The University discriminated against Ms. Chen on the basis of her disabilities by failing to afford reasonable accommodations in response to her requests even though the accommodations would not have fundamentally altered the nature of the University's program.

151.   The University also failed, in good faith, to initiate and/or engage in an interactive process with Ms. Chen to determine reasonable accommodations for Ms. Chen so that she would not be excluded from the participation in, be denied the benefits of, or otherwise be subjected to discrimination by the University.

152.   The University could have accommodated Ms. Chen but for its lack of good faith.

153.   Had the University provided Ms. Chen with reasonable accommodations, Ms. Chen would have graduated from the University.

154.   The University discriminated against Ms. Chen because of her disabilities.

155.   As a direct and proximate result of the University's discrimination, as described above, the University violated the ADA.

156.   As a direct and proximate result of the University's discrimination, as described above, the University denied Ms. Chen participation in, denied her the benefits of, and/or subjected her to discrimination.

157.   As a direct and proximate result of the University's discrimination, as described above, the University wrongfully dropped Ms. Chen from its rolls, and as a result, Ms. Chen suffered the loss of educational opportunity.

158.   As a direct and proximate result of the University's discrimination, as described above, Ms. Chen has incurred attorney's fees and litigation costs.

159.   The University's discrimination was willful and/or intentional.

WHEREFORE, Plaintiff Vivian Chen demands judgment and declaratory judgment against Defendant University of the Sciences in Philadelphia plus all remedies available under the ADA, including but not limited to, equitable relief, including the immediate and full reinstatement in the University's College of Pharmacy program with access to reasonable accommodations, removal from her academic record of the failing grades that she received as a result of the University's violations of her rights, and recognition of all course credits that she has obtained thus far; attorney's fees and litigation costs; and all other such relief that this Court deems appropriate.

RESPECTFULLY SUBMITTED,

BERNEY & SANG

DAVID J. BERNEY, ESQUIRE
JENNIFER Y. SANG, ESQUIRE

21

Berney & Sang
8 Penn Center
1628 JFK Boulevard, Ste. 1000
Philadelphia, PA 19103
djberney@berneylaw.com
215-564-1030 (office)
215-751-9739 (fax)

Attorneys for Plaintiff

Dated: February 22, 2019